Filed 6/18/25  P. v. White CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>BOBBY LEE WHITE, JR.,<br><br>　　Defendant and Appellant. | A170039, A170506<br><br>(Solano County<br>Super. Ct. Nos. F2300556,<br>FCR367586, FCR365196) |

In these two appeals, Bobby Lee White seeks review of his four-year prison term on multiple felony convictions.  The sentence was imposed in a consolidated sentencing proceeding on convictions in three cases, the first two of which were resolved by plea, and the third by jury trial.  The jury trial occurred on charges that were filed against White after he had been placed on probation for charges in the first case.  Prior to the trial, the prosecutor offered White a plea agreement calling for two years in prison in the first two cases and an additional concurrent term on the charges in the third case.  White rejected the offer.

To ensure that White understood the potential consequences of his decision to reject the prosecutor's offer, the trial court indicated it had already decided to impose a sentence of two years on the first and second

cases; whether he won or lost at trial, the court advised White, his sentence would be two years, but the sentence would be longer than two years if he lost. After the jury returned a conviction in the third case, the court sentenced White to a four-year term, comprising 16 months on the charges in the first two cases plus a consecutive term of two years eight months on the charges in the third case. The record shows that, at sentencing, the court weighed mitigating circumstances against aggravating circumstances and chose the lower triad term of two years for the principal count in the third case, but exercised its discretion to run some of the terms imposed in the other cases consecutively to the term imposed in the third case.

In two consolidated appeals, White seeks review of the sentence. The sole issue raised is a claim of retaliatory sentencing. White contends that, in imposing a four-year prison sentence, the trial court violated his due process rights by punishing him for electing to exercise his right to a jury trial. We disagree and will affirm.

## I. BACKGROUND

On August 30, 2022, the Solano County District Attorney filed a complaint in case No. FCR365196 charging White with unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a), count 1); misdemeanor driving under the influence (Veh. Code, § 23152, subd. (a), count 2); driving while having 0.08 percent or higher blood alcohol (Veh. Code, § 23152, subd. (b), count 3); misdemeanor driving without a license (Veh. Code, § 12500, subd. (a), count 4); and misdemeanor hit and run resulting in property damage (Veh. Code, § 20002, subd. (a), count 5).

On September 8, 2022, White pleaded no contest to the first and second counts. White was released on a *Cruz* waiver.[1] The remaining

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*).

2

counts were dismissed. On November 28, 2022, the court placed White on probation for two years with various terms and conditions, including abstaining from alcohol and illegal drugs.

On March 14, 2023, the Solano County District Attorney filed an information in case No. FCR367586 charging White with receiving stolen property (Pen. Code, § 496, subd. (a), count 1). White's probation was revoked following his arrest. The district attorney also alleged prior felony convictions pursuant to Penal Code section 1203, subdivision (e)(4) and various aggravating factors relating to White's probation violations.

On April 27, 2023, White pleaded no contest to the charge in case No. FCR367586. White also admitted violating the terms of his post release community supervision in another case, No. FCR367587, and violating his probation in No. FCR365196. The plea agreement contemplated that, at sentencing, White would be placed on two years of formal probation, and he was again released on a *Cruz* waiver. White failed to appear for sentencing in case Nos. FCR367586 and FCR365196.

Before he could be sentenced, White was arrested and later charged in case No. F2300556 with driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a), count 1); receiving a motor vehicle as stolen property (Pen. Code, § 496d, subd. (a), count 2); and evading an officer (Veh. Code, § 2800.2, subd. (a), count 3). The district attorney also alleged various prior felony convictions, including prior convictions for driving a vehicle without consent (Pen. Code, § 666.5).

Before trial in case No. F2300556, White rejected a plea agreement calling for him to spend two years in prison. In the following colloquy, the trial court described the parameters of the plea bargain, as well as the

3

procedural posture of case No. FCR367586, before asking White if he understood the consequences of proceeding to trial:

"THE COURT: . . . [¶] . . . [¶] Mr. White, before we get started, just because of the unique nature of the posture of your case, I want to put on the record the last offer made to you. And if you are interested in it, that's fine; if you'd like to proceed to trial, that's your right as well. But it's important to me, given the unique nature of it, that you understand it.

"As it stands right now, you were pending judgment and sentence on a case [No. FCR367586] for which there was a Cruz waiver. So on that case, because of the Cruz waiver, I can and will be giving you two years in the state prison on that case. I've already made up my mind in that regard.

"The district attorney has indicated that if you plead to one of the felonies in the new case [No. F2300556], that he'll run that concurrent with that two years, so the maximum you'll get is two years in the state prison with your credits.

"If you go to trial and you win, you'll still go to prison for two years. If you go to trial and you lose, you will be sentenced on—whatever charge you get, you'll be sentenced on that, and that will be in addition to the two years.

"So you're going to get two years regardless. If you win, you still get two years; if you lose, you get more. Do you understand that, sir?

"THE DEFENDANT: Yes."

The court also confirmed White would have received credits for time spent in jail in another case under the plea agreement.

On November 16, 2023, a jury convicted White of counts 1 and 3 in case No. F2300556. On December 8, 2023, the court found true beyond a reasonable doubt a prior conviction and certain aggravating factors.

At the sentencing hearing on March 11, 2024, which included all three cases noted above, the prosecutor asked the court to impose the upper term on the vehicle theft count, arguing White had evaded police through a crowded parking lot in case No. F2300556, endangering multiple people. The court noted:

"There are a couple things about this case that are unusual; Mr. White had an opportunity to resolve this case for two years and through the consultation of his counsel and chose not to do so. What would seem to me inexplicable, but nonetheless, we gave him an opportunity for probation and he failed to appear. But beyond failing to appear, he committed new crimes and he committed new crimes of 2800.2. Probation had kept his maybe his fifth or sixth 2800.2, so that, again, is a kind of an astronomical number.

"I had been willing to give him an opportunity at rehabilitation, but he did not avail himself of it. When he caught probation the second time, he didn't seem like he was wholehearted or completely sincere in his efforts, seemed like he was trying to mitigate the time he might spend in custody.

"In my analysis of this case, based on his record, which is something the Court can consider separate and apart from a jury finding, the aggravating circumstances—I think the aggravating circumstances outweigh the mitigating circumstances. I do find the element of the circumstances, but as a general principle, he's been given numerous

opportunities to address those hardships and traumas that he's suffered, but he's failed repeatedly to do so.

"Nonetheless, the Court is inclined to not impose the high term but instead impose midterm across the board. I think that is a better sentence. I think it is a safer analysis for purposes of the new sentencing rules and when we get to the same number of years that People are asking for because I think 4 years is appropriate. Four years may not solve the concerns of Mr. White's criminality, but it will keep the community safe for, at least, some period of time.

"And if he is sincere about his desire to change the course of his life, he's free to take advantage of the programs in prison or programs upon his release.

"So in F23-00556, as to Count 1, a violation of 10851(a) of the Vehicle Code, I'm gonna impose the midterm of 2 years[2] as the base term, that gives him a principal term of 2 years. I will impose all insubordinate [*sic*] terms and enhancements.

"In F23-0056 [*sic*], as to Count 3, a violation of 2800.2, I'm gonna select the midterm of 2 years, impose that consecutively at one-third the midterm for 8 months consecutive.

"As to FCR-367586, Count 1, a violation of 496(a) of the Penal Code, again, I'm gonna select the midterm of 2 years, impose that consecutively at one-third the midterm of 8 months.

"In FCR-365196, as to Count 1, a violation of Vehicle Code Section 10851(a) . . . , I'm selecting the midterm of 2 years. Again,

---

2 The court later clarified that, due to White's prior vehicle theft conviction (Veh. Code, § 10851), the two-year term the court selected for this count was the *low term* under the applicable enhanced sentencing triad (see Veh. Code, § 10851, subd. (e); Pen. Code, § 666.5, subd. (a)).

imposing a consecutive one-third the midterm of 8 months, that gives him a total consecutive subordinate terms and enhancements of 2 years, adding up to a higher prison term of 4 years.

"And the Court is—the Court is selecting the midterm in each of these cases, although I've indicated I think I could impose a high term. I'm just choosing the midterm because there are some mitigating circumstances. And I think that's the appropriate term in the interest of justice for each of these cases."

Consistent with this explanation, the trial court sentenced White as follows: case No. F2300556: the low term of two years for vehicle theft (Veh. Code, § 10851), eight months consecutive (one-third the midterm) for evading (Veh. Code, § 2800.2, subd. (a)); case No. FCR367586: eight months consecutive (one-third the midterm) for possession of stolen property (§ 496, subd. (a)); case No. FCR365196: eight months consecutive (one-third the midterm) for vehicle theft (Veh. Code, § 10851, subd. (a)), and a concurrent 180 days in county jail for driving under the influence (Veh. Code, § 23152, subd. (a)). The aggregate term was four years in state prison.

## II. DISCUSSION

Penalizing a defendant in sentencing for exercising his or her jury trial right violates the due process clause of the Fourteenth Amendment. (*In re Lewallen* (1979) 23 Cal.3d 274, 278 (*Lewallen*); *People v. Collins* (2001) 26 Cal.4th 297, 306–307.) As our Supreme Court has explained, " 'a court may not . . . treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.' " (*People v. Clancey* (2013) 56 Cal.4th 562, 575.)

7

In *Lewallen*, the defendant refused to accept a negotiated sentence. Following a jury trial, at sentencing, the defense attorney requested informal rather than formal probation. (*Lewallen*, *supra*, 23 Cal.3d at p. 276.) The trial court responded: " 'I think I want to emphasize there's no reason in having the District Attorney attempt to negotiate matters if after the defendant refuses a negotiation he gets the same sentence as if he had accepted the negotiation. It is just a waste of everybody's time, and what's he got to lose. And as far as I'm concerned, if a defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but on the other hand he's not going to have the consideration he would have had if there was a plea.' " (*Id.* at p. 277.) The Supreme Court remanded the matter for resentencing, finding that the defendant had shown "that the trial court's exercise of its sentencing function was improperly influenced by his refusal of the proffered plea bargain and insistence on his right to trial." (*Ibid.*)

In doing so, however, the *Lewallen* court emphasized "that a trial court's discretion in imposing sentence is in no way limited by the terms of any negotiated pleas or sentences offered the defendant by the prosecution. The imposition of sentence within the legislatively prescribed limits is exclusively a judicial function." (*Lewallen*, *supra*, 23 Cal.3d at p. 281.) "Legitimate facts may come to the court's attention either through the personal observations of the judge during trial [citation], or through the presentence report by the probation department, to induce the court to impose a sentence in excess of any recommended by the prosecution." (*Ibid.*) "The mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in

itself support the inference that he was penalized for exercising his constitutional rights." (*People v. Szeto* (1981) 29 Cal.3d 20, 35.)

We are unpersuaded that the sentence at issue here was based in some respect on White's refusal to accept an advantageous plea bargain. The record reflects the court's concern, prior to trial, that White understood the consequences of not accepting the plea bargain offer in terms of the potential for additional prison time, if convicted. This was no threat by the court; White would have served a two-year sentence regardless of whether he went to trial (and even if he was acquitted) because he was arrested while out of custody on a *Cruz* waiver in case No. FCR367586. The court had already determined it would sentence White to two years in that case for that reason. White would get additional time if he lost at trial because *the plea offer from the district attorney*, not a condition imposed by the court, included a sentence to run concurrently with White's sentence for violating the *Cruz* waiver. The court indicated that a conviction would result in serving more than two years because the plea offer would perforce no longer be on the table: "If you go to trial and you lose, you will be sentenced on . . . whatever charge you get . . . ," the court explained.

This is not a *Lewallen*-type scenario in which the court told White that, if he went to trial and lost, he was " 'not going to have the consideration he would have had if there was a plea.' " (*Lewallen*, *supra*, 23 Cal.3d at p. 277.) At sentencing, the court's comments demonstrate that it considered appropriate sentencing factors. For example, the court noted White had the opportunity to resolve the case before trial for a two-year sentence. But White "failed to appear" *and* committed new crimes that included "his fifth or sixth [Vehicle Code section] 2800.2" charge. These violations were only the latest in a decade-plus pattern of criminal

9

behavior that also included repeated probation violations and terminated probations.

White attempts to argue that his case is comparable to *Lewallen*, *supra*, 23 Cal.3d 274. We disagree. In *Lewallen*, the defendant was charged with drunk driving and various firearm charges. (*Id.* at p. 276.) He rejected a plea offer and was ultimately acquitted of all but the drunk driving charge. (*Ibid.*) At sentencing, the court made comments explicitly tying the defendant's sentence to his rejection of the plea offer. (*Id.* at p. 277.) On appeal, the defendant argued his sentence "greatly exceed[ed] those ordinarily imposed . . . for equivalent criminal conduct." (*Ibid.*) Our Supreme Court agreed, holding the trial judge's language had "no rational interpretation other than that he was basing petitioner's sentence at least in part on the fact that he" rejected the plea offer. (*Id.* at p. 280.)

Read in isolation, the judge's pretrial comments here may be read to convey the impression that, if White proceeded to trial in the third case and suffered a conviction, his sentence would be more severe than the deal in front of him because he exercised his rights to go to trial. But *Lewallen* instructs us to look at the record "as a whole." (*Lewallen, supra,* 23 Cal.3d at p. 280.) As noted above, White had already been convicted in two cases and, due to his probation revocation and his *Cruz* waiver, he was facing sentencing on those two cases no matter what happened at trial. As we read the record, prior to trial on the third case the judge was simply informing White that, due to his first two convictions, there would inevitably be adverse sentencing consequences in the third case if he was convicted.

We do not view this as retaliation for White's prospective conduct (i.e., going to trial in the third case). The judge was simply giving White

10

information about sentencing exposure flowing from something that had happened in the past (i.e., from two pending convictions on which sentence had yet to be imposed and poor performance on probation). To put the circumstances here in the terms the case law does, this is not a situation in which the court " ' "treat[ed] a defendant . . . more harshly" ' " than the terms of a pending offer " ' "*because* he exercise[d]" ' " his right to go to trial. (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 761–762, italics added, disapproved on other grounds in *People v. Bryant* (2021) 11 Cal.5th 976, 986, fn. 5.) Rather, it treated him " ' "more harshly" ' " than the pending offer " ' "*because*" ' " of his yet-to-be-imposed sentence on prior convictions and his poor probation record. (*People v. Ghebretensae*, at p. 762, italics added.)

Though it would have been preferable for the court to state clearly that it was merely providing an "indicated sentence" prior to trial, the court had enough information about White from the first two cases to provide an informed indication of how it would exercise its power to choose between consecutive and concurrent sentences in a joint sentencing on all three cases. (Cf. *People v. Clancey*, *supra*, 56 Cal.4th at p. 576 ["a trial court that intends to offer an indicated sentence should not only identify it as such, but should also ensure that the record makes clear the indicated sentence represents the court's best judgment as to the appropriate punishment for this defendant and this offense, regardless of whether guilt is established by plea or at trial"].)

Nothing on this record suggests that, prior to trial, the court arbitrarily committed itself to a discretionary sentencing choice that can only be explained by an intent to punish White for going to trial. We specifically reject the argument that the court's comment at sentencing

11

about White's passing up the opportunity to resolve all three cases based on the People's offer of two years demonstrates that it was penalizing him for exercising his right to defend himself at trial. It is hardly surprising that, at sentencing, the court commented on the unsuccessful gamble White took in turning down a generous pretrial offer from the People that he had been warned did not bind the court.

The most salient aspect of the sentencing record is that, as noted, the court took into account appropriate sentencing considerations. The court considered evidence of White's danger to the community in the form of his extensive criminal history and repeated failure to satisfactorily complete probation. Against that, it balanced various challenges White faced throughout his life. Such a measured assessment is not consistent with the court allegedly punishing White for exercising a constitutional right. (See *People v. Ghebretensae, supra,* 222 Cal.App.4th at p. 763 ["Nothing in the foregoing indicates to this court that the sentence imposed was punishment for appellant's exercise of his jury trial right. . . . The court based its decision on appellant's extensive criminal history, which was detailed in the probation officer's report"].)

Notably, unlike the situation in *Lewallen* where the comments the trial court made at sentencing were consistent with "no rational interpretation other than" that it held the defendant's decision to go to trial against him (*Lewallen, supra,* 23 Cal.3d at p. 280), in this case the court refrained from throwing the proverbial book at White. For the principal term, the court selected the low term of two years, despite the prosecutor having advocated for the aggravated term. And while the court selected some of the terms to run consecutively, that choice was within the court's discretion given the potential harm to multiple victims (see, e.g., *People v.*

*Shaw* (2004) 122 Cal.App.4th 453, 458; *People v. Oates* (2004) 32 Cal.4th 1048, 1063).  Although the court noted White had an opportunity to resolve the charges against him before trial, it only did so in the context of noting White's overall pattern of repeatedly committing new crimes and violating the terms of his probation.

## III. DISPOSITION

Affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.